# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

NAVARRO A. HAMMOND,

              Defendant.

Criminal Action No. 92-471 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

Nearly 25 years ago, Navarro Hammond was sentenced to 380 months' imprisonment for possession with intent to distribute cocaine base (or "crack") and marijuana, and for maintaining a premise for the distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 841(b)(1)(D), and 856(a)(2). The 31-year length of Hammond's sentence reflected his career-offender designation, pursuant to § 4B1.1 of the then-mandatory United States Sentencing Guidelines ("Guidelines"), based on his two prior convictions for a "crime of violence," as such crimes were once defined under § 4B1.2 of the Guidelines.

Due to substantial changes in federal sentencing since Hammond began serving his 380-month sentence, he claims that if he were sentenced today, the now-advisory Guidelines range would be 92 to 115 months' imprisonment, *see* Def.'s Second Supp. Mot. Vacate at 1, ECF No. 86, and, further, that these changes should be applied to benefit him now. Over the last decade, Hammond filed a motion, under 18 U.S.C. § 3582, asking for a sentence reduction, *see* Def.'s Mot. Modification Sentence ("Def.'s Mot. Modify."), ECF No. 76, and a motion, under 28 U.S.C. § 2255, asking that his sentence be vacated and that he be resentenced under the current Guidelines, *see* Def.'s Mot. Vacate, Set Aside, Correct Sentence, ECF No. 83, as supplemented,

Def.'s Supp. Mot. Vacate ("Def.'s Supp. § 2255 Mot."), ECF No. 85, and Def.'s Second Supp.

Mot. Vacate.  Hammond's § 2255 motion seeks relief that, if awarded, encompasses the relief

sought under his sentence-reduction motion.[1]  To prevail on the broader motion, Hammond must

survive the gauntlet of procedural obstacles that the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA") erects and then establish his right to relief under an especially high

merits standard.  Hammond has done just that, and his § 2255 motion is granted.  This relief

renders his sentence-reduction motion, under 18 U.S.C. § 3582, moot and that motion is denied

as such.

## I.    BACKGROUND

On July 10, 1992, Hammond was arrested in connection with an investigation into the

murder of a D.C. Corrections Officer, *see* Presentence Report ("PSR") at ¶¶ 3–5, ECF No. 96,

who was "in route to D.C. Superior Court in order to testify against" a close associate of

Hammond "in an unrelated pending matter which occurred in a D.C. correctional facility," *id*. at

¶ 4.  This murder was "carried out … to prevent [the officer] from testifying."  *Id*.  The arresting

officers searched Hammond's home and discovered 110.5 grams of marijuana, 166.6 grams of

crack, 80.773 grams of heroin, and drug paraphernalia, with Hammond's prints on a bag of

marijuana and a box of cocaine base.  *Id.* at ¶¶ 6–7.  Hammond was subsequently convicted, in

1993, at a jury trial on charges of possession with intent to distribute 50 grams or more of

cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), possession with intent

to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and maintaining

---

[1]    Hammond's reply clarifies that he seeks a total resentencing.  Def.'s Reply Mot. Vacate at 32, ECF No. 94. Although Hammond asks, in conjunction with his request for resentencing, that his new sentence not exceed the high end of the current applicable Guidelines range, any resentencing hearing will necessitate a fresh look at all sentencing factors under 18 U.S.C. § 3553(a).

a premise to manufacture, distribute, store, and use a controlled substance, in violation of 21 U.S.C. § 856(a)(2). *See* Judgment in a Criminal Case ("Judgment") at 1, ECF No. 42.[2]

At Hammond's sentencing, in March 1994, the presiding judge generally adopted "the factual findings and guideline application in the [PSR]." Judgment, Statement of Reasons ("SOR"), at 5, ECF No. 42. According to his PSR, Hammond had, at that time, two prior felony convictions for a crime of violence: a conviction, at age 17, in the District of Columbia Superior Court for robbery, PSR at ¶ 25; and a conviction, at age 18, in the District of Columbia Superior Court for murder while armed, arising from the defendant fatally shooting a robbery victim, *id.* at ¶ 26. The PSR reported that those prior convictions, in combination with Hammond's instant drug convictions, subjected Hammond to the Guidelines' career-offender designation, under U.S.S.G. § 4B1.1. *Id.* at ¶¶ 21, 31.

To qualify as a "career offender," a defendant at least 18 years old must face sentencing for a felony that was "either a crime of violence or a controlled substance offense" and have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). In 1993, the Guidelines defined "crime of violence" in three ways. First, under the "elements clause," crimes of violence included any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(1)(i) (1993). Second, under the "enumerated-felonies clause," crimes of violence included "burglary of a dwelling, arson, or extortion" or a felony that "involves use of explosives." *Id.* § 4B1.2(1)(ii) (1993). Third, under the "residual clause," crimes of violence included any felony that "otherwise involves conduct that presents a serious potential risk of

---

[2] Hammond was also arrested for and convicted in D.C. Superior Court for the murder of the D.C. Correctional Officer. PSR ¶ 33; *Wright v. United States*, 979 A.2d 26, 28–29 (D.C. 2009) (noting that Hammond was tried with a co-defendant in January 1997 and "[b]oth men were convicted of various offenses, including first-degree murder while armed and conspiracy to commit that offense.").

physical injury to another." *Id.*[3]  Without stating which definition of crime of violence applied to either of Hammond's prior convictions, the district court judge sentenced Hammond as a career offender.  Judgment, SOR, at 4.

Thus, as a career offender, Hammond's criminal history category under the operative Guidelines was VI.  U.S.S.G. § 4B1.1 (1993); *see also* Judgment, SOR, at 4.  Additionally, given that in 1993 the statutory maximum for a violation of 21 U.S.C. § 841(a) involving more than 50 grams of cocaine base was life imprisonment, *see id.* § 841(b)(1)(A) (1993), Hammond's offense level under the guidelines was 37.  U.S.S.G. § 4B1.1 (1993); *see also* Judgment, SOR, at 4.  A combined criminal history category of VI and offense level of 37 resulted in a Guidelines range of 360 months to life imprisonment.  U.S.S.G. Ch. 5 Pt. A (1993); *see also* Judgment, SOR, at 4.

At the time of Hammond's sentencing, Congress's instruction that "court[s] shall impose a sentence of the kind, and within the range, referred to [in the Guidelines]," 18 U.S.C. § 3553(b)(1), was still effective.  Thus, Hammond was sentenced on his cocaine-base conviction to 380 months' imprisonment, to run concurrently with a 37-month sentence on the marijuana conviction and a 240-month sentence on the premises conviction.  Judgment at 2.  According to the Bureau of Prisons, Hammond's scheduled release date for his federal convictions is July 15, 2020.  *See* Find an Inmate, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search "Navarro Hammond").

---

[3]     The 2016 version of the Guidelines amended the definition of "crime of violence" by eliminating the residual clause and rewriting the enumerated-felonies clause to include "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use of unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."  *Compare* U.S.S.G. § 4B1.2(a)(2) (1993) *with* U.S.S.G. § 4B1.2(a)(2) (2016).

On Hammond's direct appeal, the D.C. Circuit affirmed the convictions, rejecting several arguments about the district court's evidentiary rulings at trial. *United States v. Hammond*, 52 F.3d 1123 (table) (D.C. Cir. 1995).

Hammond filed his first § 2255 motion in June 2001. Def.'s First Mot. Vacate, ECF No. 55. By that time, this case had been reassigned to another judge since the original sentencing judge was no longer serving. *See* Order (Feb. 6, 2002), ECF No. 56. Hammond's motion, and a later-filed supplement, *see* Def.'s Supp. Authority, ECF No. 57, sought to correct his sentence following *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), which together articulated the Sixth Amendment's guarantee that all facts, other than a prior conviction, increasing a criminal penalty beyond a statutory maximum must be proved to a jury beyond a reasonable doubt. *See* Def.'s First Mot. Vacate at 3–15; Def.'s Supp. Authority at 1–2. In April 2005, this § 2255 motion was denied because neither Supreme Court decision had been made retroactive. *See* Order (Apr. 26, 2005) at 1, ECF No. 65. Hammond never received a certificate of appealability. *See* Order (Aug. 30, 2005), ECF No. 71 (district court denial of certificate of appealability); Order (Mar. 20, 2008), ECF No. 75 (circuit court denial of certificate of appealability).

Shortly before denial of Hammond's first § 2255 motion, federal sentencing was affected by the first of several legal shifts at the heart of this case. In January 2005, the Supreme Court issued *United States v. Booker*, 543 U.S. 220 (2005), ruling that the mandatory Guidelines suffered from the same constitutional infirmity identified in *Apprendi* and *Blakely*. *Booker*, 543 U.S. at 233–34. As a remedy, the provision making the Guidelines mandatory was severed. *Id.* at 245 (invalidating 18 U.S.C. § 3553(b)(1)). Thus, since *Booker*, the Guidelines have been advisory.

Next, in November 2007, the United States Sentencing Commission promulgated Amendment 706 to the Guidelines, which reduced by two offense levels the base offense level in the Drug Quantity Table corresponding to a given crack cocaine drug quantity. *See* U.S.S.G. App. C, Vol. III at 226–31 (amending U.S.S.G. § 2D1.1(c)). Amendment 706 was subsequently made retroactive. *See* U.S.S.G. § 1B1.10(d). Based on Amendment 706, Hammond moved, in April 2008, for a sentencing reduction pursuant 18 U.S.C. § 3582(c)(2). Def.'s Mot. Modify at 1. That motion is the first of Hammond's two pending motions.

Two years later, Hammond filed a motion to dismiss his indictment under the extant version of Federal Rule of Criminal Procedure 12(b)(2), which authorized a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2) (2010). *See* Def.'s Mot. Dismiss Indictment, ECF No. 77. Within a month, Hammond's motion to dismiss was dismissed as untimely, *see* Order (Aug. 4, 2010), ECF No. 78, which decision the D.C. Circuit affirmed, *see* Mandate (July 11, 2011), ECF No. 81. The orders did not mention Hammond's still pending motion to reduce his sentence, however. For the next several years, no activity occurred in Hammond's case.

Then, in June 2015, the Supreme Court, in *Johnson v. United States*, 135 S. Ct. 2551 (2015), held as unconstitutionally vague the so-called residual clause in the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(1), which enhances the sentence for those convicted of a federal firearms offense, under 18 U.S.C. § 922(g), after three or more prior convictions for "a violent felony or a serious drug offense, or both," as defined in 18 U.S.C. § 924(e)(2)(B). Pertinent here, ACCA defines "violent felony" in the same way the 1993 version of the Guidelines defined "crime of violence," as, first, having "as an element the use, attempted use, or threatened use of physical force against the person or another," 18 U.S.C.

§ 924(e)(2)(B)(i); second, an enumerated felony, *id*. § 924(e)(2)(B)(ii); and, third, in the residual

clause, "conduct that presents a serious potential risk of physical injury to another," *id*. *Compare*

*id*. § 924(e)(2)(B) *with* U.S.S.G. § 4B1.2(1) (1993).[4] In *Johnson*, which considered a vagueness

challenge only to the residual clause's definition of violent felony, the Court ruled that "the

indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice

to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence

under the clause denies due process of law." 135 S. Ct. at 2557. "Two features of the residual

clause conspire[d] to make it unconstitutionally vague." *Id*. First, using the categorical approach

to determine the risk that a prior conviction posed "ties the judicial assessment of risk to a

judicially imagined 'ordinary case' of a crime." *Id*. Second, increasing punishment based on

past convictions that posed a "serious potential risk of physical injury to another" "leaves

uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id*. at 2558.

The following year, the Supreme Court made *Johnson* retroactive to cases on collateral

review. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). A month after *Welch*,

Hammond filed an emergency motion in the D.C. Circuit asking for certification to file a second

§ 2255 motion. *See* 28 U.S.C. §§ 2244(b)(3), 2255(h)(2) (requiring court approval for a

successive § 2255 motion). Hammond, relying on *Johnson*, intended to attack his sentence

insofar as it relied on the Guidelines' career-offender designation. Def.'s Emergency Mot.

Authorization Second or Successive Mot. at 5–7, ECF No. 82-1. The motion for certification

was granted. Order (June 23, 2016), ECF No. 82. On June 23, 2016, to avoid potential

timeliness problems, Hammond filed an abridged § 2255 motion, *see* Def.'s Mot. Vacate, Set

Aside, Correct Sentence, as permitted by this Court's June 2, 2016 Standing Order, *see* Standing

---

[4] The only difference between the two is that the ACCA's enumerated-felonies clause lists "burglary" while the Guidelines' pre-2016 enumerated-felonies clause lists "burglary of a dwelling."

Order (June 2, 2016), http://www.dcd.uscourts.gov/sites/dcd/files/1853_001.pdf (authorizing defendants asserting the right to resentencing following *Johnson* to file abridged motions by June 26, 2016, which motions would be supplemented by October 26, 2016).[5]

This case was reassigned to the undersigned judge on June 24, 2016, the day after Hammond filed his abridged § 2255 motion.

Before the October 26, 2016 deadline, the Supreme Court granted *certiorari* in *Beckles v. United States* to resolve whether a career-offender sentence under the Guidelines that relied on application of the residual clause's definition of crime of violence, suffered the same vagueness problem identified in *Johnson*. Following the grant of *certiorari*, this Court issued a second standing order staying the October 26, 2016 supplemental briefing deadline for defendants challenging a career-offender sentence dependent upon the Guidelines' residual clause. *See* Standing Order 2 (Sep. 12, 2016), http://www.dcd.uscourts.gov/sites/dcd/files/JohnsonUnitedStatesNo2.pdf.

*Beckles v. United States*, decided in March 2017, clarified that only laws that define crimes or fix permissible sentences are subject to vagueness challenges. 137 S. Ct. 886, 892 (2017). Post-*Booker*, the Guidelines do neither. *Id.* Rather, the advisory Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* Thus, application of the advisory Guidelines' career-offender label survived constitutional scrutiny. *Id.* at 897. After *Beckles*, this Court instructed petitioners subject to the prior standing orders to file any supplemental pleadings by May 26, 2017. Standing Order 4 (Mar. 22, 2017), https://www.dcd.uscourts.gov/sites/dcd/files/JohnsonUnitedStatesNo4.pdf.

---

[5]    Hammond's abridged motion mirrored the motion for certification filed in the D.C. Circuit.

Hammond filed a supplemental § 2255 motion by the new deadline. *See* Def.'s Supp. § 2255 Mot. Ten days later, he filed another supplement, correcting the prior supplement's calculation of what Hammond's sentencing range would be under the advisory Guidelines without the career-offender enhancement. Def.'s Second Supp. Mot. Vacate at 1. The Court ordered the government to respond to both of Hammond's pending motions, Min. Order (Sep. 27, 2017), which the government did in November 2017, *see* Gov't's Opp'n Mot. Modify, ECF No. 91; Gov't's Opp'n Mot. Vacate ("Gov't's Opp'n § 2255 Mot."), ECF No. 92. Three months later, Hammond filed a reply in support of his motion to vacate. Def.'s Reply Mot. Vacate ("Def.'s Reply"), ECF No. 94.

After Hammond's reply, the Supreme Court struck down 18 U.S.C. § 16(b) as unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210 (2018). Section 16(b), which provided a federal definition of "crime of violence" that resembled the ACCA's residual clause, was incorporated by reference into the Immigration and Nationality Act to determine which individuals were subject to removal. *Id.* at 1210–11. That decision elicited yet another supplement from Hammond. Def.'s Supp. Reply. Mot. Vacate, ECF No. 95.

Following this lengthy history, Hammond's motion to modify and his motion to vacate are at last ripe for review.

## II.    LEGAL STANDARD

A person in federal custody may petition the court in which he was sentenced for resentencing "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack … ." 28 U.S.C. § 2255(a). A court shall correct a sentence if "the sentence

imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b).  The petitioner bringing a motion under 28 U.S.C. § 2255 must establish, by a preponderance of the evidence, the denial of a constitutional right. *See United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).

All motions under § 2255 are subject to "the strict time limits that Congress has placed on prisoners seeking collateral relief." *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002); *see also* 28 U.S.C. § 2255(f).  Section 2255 provides several possible one-year periods during which a petitioner may file a motion, including within one year of "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3).  A motion that is timely under only § 2255(f)(3) must also show that the asserted right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.*  These are independent conditions limiting the availability of relief. *Dodd v. United States*, 545 U.S. 353, 357–58 (2005).  Before a petitioner may file a second or successive § 2255 motion, the petitioner must make at least a prima facie showing that the motion contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); *see also In re Williams*, 759 F.3d 66, 70 (D.C. Cir. 2014).

Separately, a sentence may be modified under 18 U.S.C. § 3582(c) if the defendant meets two requirements: "First, the defendant must have been sentenced based on a sentencing range that has subsequently been lowered. … Second, a reduction in the defendant's sentence must be consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Berry*, 618 F.3d 13, 16 (D.C. Cir. 2010) (internal quotation marks omitted).

### III.    DISCUSSION

Hammond's § 2255 motion to vacate his sentence asks for relief that is broader than his § 3582(c) motion to reduce the sentence.  Since granting the motion to vacate would obviate consideration of the motion to reduce, the former motion is considered first.

Hammond's motion to vacate raises several questions that have divided federal courts in the wake of the Supreme Court's recent reconsideration of laws that once dictated federal sentencing.  *See United States v. Carr*, 314 F. Supp. 3d 272, 277–78 and n.5–8 (D.D.C. 2018) (cataloging "questions of significant importance" following *Johnson* and *Beckles* and summarizing resulting disagreements).  Some questions touch on procedural matters under AEDPA and others on substantive issues.  Here, Hammond's compliance with AEDPA's litany of procedural requirements is considered first, with the substantive issues to follow.

### A.    Hammond's § 2255 Motion to Vacate is Not Barred by AEDPA's Procedural Requirements

The government presses three reasons that Hammond's § 2255 motion must be dismissed for failure to meet AEDPA's procedural requirements: (1) timeliness, (2) statutory limits on successive petitions, and (3) default.  Each is unavailing for the reasons discussed below.

#### 1.    Timeliness Under 28 U.S.C. § 2255(f)(3)

Motions under § 2255 are subject to a "1-year period of limitation."  28 U.S.C. § 2255(f). The limitation period runs from the latest of several possible dates, with only one date available to Hammond: "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  *Id.* § 2255(f)(3).

Prior to 2005, circuit courts were divided as to how to read § 2255(f)(3).  *See Dodd v. United States*, 545 U.S. 353, 356 (2005) (referencing "conflict in the Court of Appeals over

when the limitation period in [§ 2255(f)(3)] begins to run"). Some courts read § 2255(f)(3)'s limitation period to run from the date that Supreme Court initially recognized a right, while others read the period to run from the date that the right is made retroactive. *Id.* (summarizing circuit split). *Dodd* ruled that under § 2255(f)(3), "[a]n applicant has one year from the date on which the right he asserts was initially recognized by [the Supreme] Court" to file a motion. *Id.* at 357. The Court reached that conclusion by emphasizing the unique function of § 2255(f)(3)'s two clauses. Timeliness is wholly defined by the first clause, which authorizes motions filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court." *Id.* at 358 ("Dodd's reliance on the second clause to identify the operative date is misplaced."). The second clause, which requires that the "right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," operates to "impose[] a condition on the applicability" of § 2255(f)(3). *Id.* "That means that [§ 2255(f)(3)'s] date … does not apply at all if the conditions in the second clause … have not been satisfied." *Id.* Indeed, "[a]s long as the conditions in the second clause are satisfied so that [§ 2255(f)(3)] applies in the first place, that clause has no impact whatsoever on the date from which the 1–year limitation period in [§ 2255(f)(3)] begins to run." *Id.*

*Johnson* was decided on June 26, 2015, and Hammond's emergency motion to file a successive petition was filed, on May 31, 2016, with the D.C. Circuit, which granted the motion allowing the docketing of his petition in this Court on June 23, 2016. *See* Order (June 23, 2016); Def.'s Mot. Vacate, Set Aside, Correct Sentence. Thus, Hammond filed his motion within one year of *Johnson.* Nevertheless, the government claims that Hammond's motion is untimely because "the Supreme Court in *Johnson* did not itself recognize the substantive right that the defendant now claims entitles him to resentencing." Gov't's Opp'n § 2255 Mot. at 13. Instead,

in the government's view, *Johnson* applies only to the ACCA and Hammond's motion must wait until the Supreme Court itself invalidates sentences pursuant to the mandatory Guidelines' residual clause. *Id.* at 13–14. Hammond counters that "*Johnson* announced the right not to have a sentence fixed by an unconstitutionally vague residual clause," Def.'s Reply at 1, leaving "no doubt that *Johnson* rendered the residual clause of the mandatory Career Offender Guidelines unconstitutionally void for vagueness," Def.'s Supp. § 2255 Mot. at 16.

While not yet addressed by the D.C. Circuit, other circuit courts have considered whether a § 2255 motion indistinguishable from Hammond's is timely. The Third, Fourth, Sixth, Ninth and Tenth Circuits have interpreted *Johnson* as strictly limited to the ACCA and rejected petitions like Hammond's that were challenging the residual clause contained in the mandatory Guidelines, as "untimely." *See United States v. Blackstone*, 903 F.3d 1020, 1028 (9th Cir. 2018) ("As of now, however, Blackstone's motion is untimely."); *United States v. Green*, 898 F.3d 315, 317 (3d Cir. 2018) ("[W]e need not reach the merits of Green's motion because Green's challenge is untimely."); *United States v. Greer*, 881 F.3d 1241, 1249 (10th Cir. 2018) ("We agree with the well-reasoned decisions of our sister circuits and therefore hold that Mr. Greer's motion is untimely."); *United States v. Brown*, 868 F.3d 297, 299 (4th Cir. 2017) ("We are thus compelled to affirm the dismissal of Petitioner's motion as untimely under 28 U.S.C. § 2255(f)(3)."); *Raybon v. United States,* 867 F.3d 625, 627 (6th Cir. 2017) ("We conclude that his claim is not timely under 28 U.S.C. § 2255(f)(3)."). The First Circuit, in a slightly different posture, also evaluated the timeliness of a motion like Hammond's as a product of whether *Johnson* extends to the mandatory Guidelines, and "tentative[ly]" ruled that a motion like

Hammond's filed within one year of *Johnson* could not be dismissed as untimely. *Moore v. United States*, 871 F.3d 72, 77, 77 n.3, 80 (1st Cir. 2017).[6]

The Seventh Circuit has also addressed the timeliness of a motion like Hammond's, but jettisoned the analytic approach proposed by the parties and seemingly used by other courts, of assessing the procedural timeliness of the § 2255 petition by examining the scope of the newly recognized right. As the Seventh Circuit aptly observed, debating whether *Johnson* announced a right that applies to a career-offender sentence under the mandatory Guidelines "improperly reads a merits analysis into the limitations period." *Cross v. United States*, 892 F.3d 288, 293 (7th Cir. 2018). Section 2255(f)(3)'s limitation period "runs from 'the date on which the right *asserted* was initially recognized by the Supreme Court.'" *Id.* at 293–94 (emphasis in original). For timeliness, a petitioner "need only claim that benefit of a right that the Supreme Court has recently recognized." *Id.* at 294. Whether a petitioner successfully proves his entitlement is the separate, merits question. *Cross*, 892 F.3d at 294; *see also United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017) ("Whether or not Snyder can ultimately prevail on his motion, he *asserts* the right established in *Johnson*, to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause. Thus, his § 2255 motion, filed within a year of the Court's decision in *Johnson*, is timely under § 2255(f)(3)." (emphasis in original)).[7] Otherwise, § 2255(f)(3)'s use of "asserted" would be superfluous. *Cross*, 892 F.3d at 294.

---

[6]     *Moore* considered only whether a successive § 2255 motion like Hammond's could be certified under 28 U.S.C. § 2255(h). 871 F.3d at 74. Thus, that court's review of the issues was admittedly "tentative." *Id.* at 80.

[7]     In *Snyder*, the Tenth Circuit considered the timeliness of a *Johnson*-based motion in which the petitioner claimed that he had been sentenced under the ACCA's residual clause, 871 F.3d at 1124–26, and ruled that the district court, by "look[ing] beyond the allegations contained in Snyder's § 2255 motion" and determining timeliness by "whether Snyder was actually entitled to relief under *Johnson*," wrongly applied § 2255(f)(3), *id.* at 1125–26. Snyder's motion was timely independent of whether he actually had been sentenced under the residual clause because his motion "*assert[ed]* the right established in *Johnson*, to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause." *Id.* In so reasoning, the *Snyder* Court endorsed the same methodology the Seventh Circuit employed. Nevertheless, in *United States v. Greer*, 881 F.3d 1241 (10th Cir. 2018), another panel of the Tenth Circuit subsequently ruled that a motion identical to Hammond's was untimely in

This Court agrees with the Seventh Circuit that the timeliness of a § 2255 motion is an independent inquiry from whether the motion seeks to vindicate a newly recognized right applicable to the petitioner. The courts that have viewed timeliness through the lens of *Johnson*'s scope settled on that approach by emphasizing § 2255(f)(3)'s second clause, which conditions relief under that section to motions claiming rights that have "been newly recognized by the Supreme Court." *Blackstone*, 903 F.3d at 1025–26; *Green*, 898 F.3d at 320–21; *Greer*, 881 F.3d at 1247; *Brown*, 868 F.3d at 301; *Raybon*, 867 F.3d at 625. This analysis falls short of grappling with *Dodd*, which made clear that timeliness under § 2255(f)(3) is exclusively a function of that provision's first clause: when "the right asserted was initially recognized by the Supreme Court." *Dodd*, 545 U.S. at 358 ("Dodd's reliance on the second clause to identify the operative date is misplaced."); *id.* ("As long as the conditions in the second clause are satisfied so that [§ 2255(f)(3)] applies in the first place, that clause has no impact whatsoever on the date from which the 1–year limitation period in [§ 2255(f)(3)] begins to run."). Injecting into the timeliness analysis whether a right has in fact been newly recognized emphasizes the wrong clause.

Focusing on only the first clause, Congress ran the limitation period from when "the right *asserted* was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3) (emphasis added). Of course, "[t]o 'assert' means '[t]o state positively' or '[t]o invoke or enforce a legal

---

an analysis that tethered the timeliness analysis to whether *Johnson* in fact required granting the petitioner's motion, *id.* at 1249. Despite the cases' analytic inconsistencies, *Greer* did not overrule *Snyder*. Rather, *Greer* distinguished *Snyder* as a case that "raised a factual question about which clause of the ACCA the sentencing court relied on in enhancing his sentence." *Id.* at 1246. By contrast, "[a] factual finding that Mr. Greer was sentenced under the residual clause of the mandatory Guidelines does not end our inquiry but raises a new one. Such a finding would then require this court to address the constitutionality of the residual clause of the mandatory Guidelines in the first instance on collateral review." *Id.* Yet, the new inquiry that *Greer* resisted is precisely what § 2255(f)(3)'s second clause, as *Dodd* explained, requires of lower courts. *Snyder* correctly recognized that the timeliness inquiry is occupied by only § 2255(f)(3)'s first clause and the nature of the right asserted. 871 F.3d at 1126. The merits of a petitioner's claim must be addressed separately. *Id.* at 1128–30.

15

right.'  Thus, in order to be timely under § 2255(f)(3), a § 2255 motion need only 'invoke' the newly recognized right, regardless of whether or not the facts of record ultimately support the movant's claim."  *Snyder*, 871 F.3d at 1026 (quoting *Assert*, BLACK'S LAW DICTIONARY (10th ed. 2014)); *see also Cross*, 892 F.3d at 294 ("[Section 2255(f)(3)] does not say that the movant must ultimately *prove* that the right applies to his situation; he need only claim the benefit of a right that the Supreme Court has recently recognized.  An alternative reading would require that we take the disfavored step of reading 'asserted' out of the statute.").  Running the limitation period from when the Supreme Court recognized the "right asserted," as the Seventh Circuit concluded, attaches significance to how a petitioner styles his claim.  If the petitioner seeks the benefit of a right purportedly recognized by the Supreme Court within the preceding year, the petition is timely.

Although timeliness depends on only the right asserted, petitioners will not be able to flood the courts with frivolous assertions of newly recognized rights, as the Tenth Circuit feared. *See Greer*, 881 F.3d at 1245 ("Mr. Greer's interpretation of *Snyder* would require this court to find that, no matter what the underlying claim, any petitioner can avoid AEDPA's clear time limits simply by invoking a right newly recognized by the Supreme Court.").  While a motion will be timely if filed within a year from the date "on which the right asserted was initially recognized by the Supreme Court," this motion may be summarily dismissed if the right has not been, in fact, either "newly recognized by the Supreme Court" or "made retroactively applicable to cases on collateral review."  *Dodd*, 545 U.S. at 358.  That the second clause does not affect timeliness does not mean it has no role to play.

Although, as noted, the D.C. Circuit has not addressed this precise question, assessing timeliness by the right asserted comports with that court's warning not to conflate § 2255's

preliminary forms of review with merits review. Indeed, the D.C. Circuit, on review of a motion for certification to file a successive § 2255 motion, which certification is proper only upon a prima facie showing that the motion contains "a new rule of constitutional law," rebuffed the government's argument that, because the petition "relies on an extension of *Graham* [*v. Florida*, 560 U.S. 48 (2010)]," the petition does not contain a new rule of constitutional law. *In re Williams*, 759 F.3d 66, 70 (D.C. Cir. 2014). The Court explained that "the government's argument that we should refuse certification of [petitioner's] *Graham* motion goes to the merits of the motion, asking us in effect to make a final determination of whether the holding in *Graham* will prevail for [petitioner]." *Id.* "[A] review of the merits at [the certification] stage is not required." *Id.*; *see also United States v. Charles Booker*, 240 F. Supp. 3d 164, 169 (D.D.C. 2017) ("As Booker correctly notes, the government's position conflates (1) authorization to file a second or successive motion under Section 2255(h), (2) the time bar under Section 2255(f)(3), and (3) the merits of the motion.").

Hammond asserts that *Johnson* guarantees the right not to have a sentence fixed by a mandatory, but vague, definition of "crime of violence." Def.'s Supp. § 2255 Mot. at 2–3, 12; Def.'s Reply at 1–2. As noted, *Johnson* was decided on June 26, 2015 and Hammond's emergency motion to file a successive petition was filed with the D.C. Circuit on May 31, 2016 and docketed in this court on June 23, 2016, within one year of *Johnson*'s issuance. *See* Order (June 23, 2016); Def.'s Mot. Vacate, Set Aside, Correct Sentence. Thus, the motion to vacate is timely.

Of course, as *Dodd* explains, Hammond has not met all § 2255(f)(3) requirements just because his motion is timely. Hammond still must establish that the claimed right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

review.  28 U.S.C. § 2255(f)(3); *see also Dodd*, 545 U.S. at 358.  In this case, § 2255(f)(3)'s

independent conditions sufficiently overlap with the merits that discussion of those conditions is

reserved for the merits portion of the opinion.

2.  *Limits on Successive Petitions Under 28 U.S.C. § 2255(h)(2)*

The government raises the specter of a second procedural impediment: second or

successive § 2255 motions "must be certified as provided in section 2244 by a panel of the

appropriate court of appeals to contain … a new rule of constitutional law, made retroactive to

cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C.

§ 2255(h)(2).  By incorporating § 2244, § 2255(h) adopts the rule that "[t]he court of appeals

may authorize the filing of a second or successive application only if it determines that the

application makes a prima facie showing that the application satisfies the requirements of this

subsection."  *Id.* § 2244(b)(3)(C).  Thus, a court of appeals may certify a successive § 2255

motion upon a "prima facie showing that it contains a previously unavailable new rule of

constitutional law made retroactive on collateral review by the Supreme Court."  *In re Williams*,

759 F.3d at 69–70.

The D.C. Circuit already certified Hammond's second § 2255 motion.  *See* Order (June

23, 2016).  Despite that certification, Hammond has not cleared § 2255(h)(2)'s gatekeeping

function.  Section 2244 also requires that "[a] district court shall dismiss any claim presented in a

second or successive application that the court of appeals has authorized to be filed unless the

applicant shows that the claim satisfies the requirements of this section."  28 U.S.C.

§ 2244(b)(4).  Section 2244(b)(4) calls for a more incisive inquiry than the court of appeals

performs at the certification stage.  *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001).

Hammond's motion to vacate intimates that the interplay of §§ 2244 and 2255 "leave[s] some doubt as to whether the district court must also consider whether the motion meets the § 2255(h)(2) standard." Def.'s Supp. § 2255 Mot. at 10. Yet, § 2255(h)(2) is not ambiguous. As the government highlights, *see* Gov't's Opp'n § 2255 Mot. at 19–20, each circuit to consider the issue has ruled that § 2255(h)(2) incorporates § 2244(b)(4). *See, e.g.*, *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018); *United States v. Murphy*, 887 F.3d 1064, 1068 (10th Cir. 2018); *Johnson v. United States*, 720 F.3d 720, 720–21 (8th Cir. 2013); *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001); *United States v. Villa-Gonzalez*, 208 F.3d 1160, 1165 (9th Cir. 2000); *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997). This precedent is persuasive. Nothing in § 2255(h)'s text entertains the possibility that § 2244 should be selectively incorporated. Perhaps in view of the tide of unfavorable precedent, Hammond's reply argues only that § 2255(h)(2)'s requirements are met. Def.'s Reply at 24–27.

As for those requirements, the parties agree that § 2255(h)(2)'s inquiry largely overlaps with that performed under § 2255(f)(3). Def.'s Supp. § 2255 Mot. at 11; Gov't's Opp'n § 2255 Mot. at 20. One critical difference is that successive petitions are prohibited unless the Supreme Court itself has made the claimed right retroactive. *See Butterworth v. United States*, 775 F.3d 459, 464 (1st Cir. 2015); *Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001); *cf. Wiegand v. United States*, 380 F.3d 890, 892–93 (6th Cir. 2004) (deciding that any court can make the retroactivity decision for purposes of § 2255(f)(3)); *United States v. Swinton,* 333 F.3d 481, 486 (3d Cir. 2003) (same); *United States v. Lopez*, 248 F.3d 427, 431 (5th Cir. 2001) (same). The consequence of § 2255(h)(2)'s unique hurdle is that, practically speaking, successive petitions that rely on § 2255(f)(3) for timeliness will almost always be dismissed because the Supreme

Court "rarely decides that a new rule is retroactively applicable within one year of initially recognizing that right." *Dodd*, 545 U.S. at 359.

The government urges that Hammond's petition does not successfully thread the needle both because the Supreme Court has not recognized the right Hammond's motion contains and the Supreme Court, if the right exists, has not made the right retroactive. Gov't Opp'n § 2255 Mot. at 20. The government is wrong on both fronts. To argue that the Hammond fails the first condition, the government simply references the arguments presented against timeliness. *Id.* Again, that muddies threshold procedural questions and the merits. *In re Williams*, 759 F.3d at 70; *see also Peppers*, 899 F.3d at 222 ("The statutory text, case law from our sister circuits, and policy considerations indicate that § 2255(h) only requires a movant to show that his sentence may be, not that it must be, unconstitutional in light of a new rule of constitutional law made retroactive by the Supreme Court. … AEDPA surely was not meant to conflate jurisdictional inquiries with analyses of the merits of a defendant's claims."). Hammond's motion asserts the protection of a new and previously unavailable right, as announced in *Johnson*: the right not to have a sentence fixed by a mandatory, but vague, residual clause. *See Welch*, 136 S. Ct. at 1264 ("It is undisputed that *Johnson* announced a new rule."); *see also* Def.'s Supp. § 2255 Mot. at 2–3, 12; Def.'s Reply at 1–2 (describing right that Hammond seeks to vindicate).

Moreover, this is the rare instance in which the Supreme Court itself swiftly gave a new right retroactive effect. *See Welch*, 136 S. Ct. at 1265 ("*Johnson* is thus a substantive decision and so has retroactive effect under *Teague* [*v. Lane*, 489 U.S. 288 (1989)] in cases on collateral review."). While the government casts *Welch*, like *Johnson*, as limited to the ACCA, Gov't Opp'n § 2255 Mot. at 21, that position, for the same reasons already discussed, fails for purposes of § 2255(h)(2). If, as Hammond argues, *Johnson* invalidates a mandatory Guidelines sentence

dependent on the residual clause, *Welch* makes the retroactivity of that new rule unimpeachable.[8]

Therefore, § 2255(h)(2) is no barrier to proceeding with Hammond's petition.

### 3. *Procedural Default*

The final procedural hurdle that the government constructs is procedural default. "The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). Cause for default exists, at a minimum, "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel … ." *Reed v. Ross*, 468 U.S. 1, 16 (1984). At least three circumstances demonstrate novelty: (1) the Supreme Court explicitly overrules its own precedent; (2) the Supreme Court changes course on a "longstanding and widespread practice to which [the Supreme Court had] not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) the Supreme Court disapproves of a once-sanctioned practice. *Id.* at 17 (quoting *United States v. Johnson*, 457 U.S. 537, 551 (1982)). For prejudice, a petitioner "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)) (emphasis and alternations in original). Prejudice analysis assumes the existence of an error. *Id.* at 1145.

Hammond's successive petition is the first time in the case's extended history that Hammond's vagueness argument appears. Consequently, the government argues, Hammond has procedurally defaulted the argument. Gov't's Opp'n § 2255 Mot. at 22. Moreover, Hammond

---

[8] *Welch* also answers the government's argument that Hammond pursues the benefit of a procedural rule, which would not be retroactive under *Teague v. Lane*, 489 U.S. 288 (1989). *See Welch*, 136 S. Ct. at 1265 ("[T]he rule announced in *Johnson* is substantive.").

cannot establish cause for the default, the government insists, because "[f]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Nor can Hammond establish prejudice, according to the government, because his asserted claim has not been made retroactive. *Id.* at 22–23. Hammond responds in two ways. First, procedural default does not apply to sentence-specific challenges. Def.'s Reply at 18–21. Second, cause and prejudice exist here. *Id.* at 21–24.

Hammond marshals no precedent supporting his first argument, but draws from principles that have informed procedural default—primarily, judicial economy and finality—and argues that they are ill fit as reasons against reopening a sentence. *See id.* at 18 ("When an error at sentencing is at issue, however, the problem of finality is lessened, for a resentencing is nowhere near as costly or as chancy an event as a trial." (quoting *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994))); *id.* at 20 ("'[T]he cost of correction is so small' because '[a] … resentencing, after all, doesn't require that a defendant be released or retried but simply allows the district court to exercise its authority to impose a legally permissible sentence." (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1334 (10th Cir. 2014))). Resolving Hammond's sweeping proposition is unnecessary because the cause-and-prejudice standard is met and that alone is sufficient.

The constitutional right *Johnson* vindicated was unforeseeable: "[N]o one—the government, the judge, or the appellant—could reasonably have anticipated *Johnson*." *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016). Sure enough, *Johnson* overruled two of the Supreme Court's prior ruling. 135 S. Ct. at 2563 ("Our contrary holdings in *James* [*v. United States*, 550 U.S. 192 (2007)] and *Sykes* [*v. United States*, 564 U.S. 1 (2011)] are overruled.").

Thus, Hammond's petition comfortably sits within *Reed*'s first example of novelty. Moreover, the prejudice visited upon Hammond is plain. Hammond was sentenced based on a mandatory guidelines' range of 360 month to life imprisonment. Judgment at 4. Hammond claims that without the career-offender designation, and based on current drug equivalency tables, his Guidelines range is 92 to 115 months' imprisonment. Def.'s Second Supp. Mot. Vacate at 1. The government does not contest the calculation. Thus, if Hammond's *Johnson* argument about the mandatory Guidelines' residual clause is right, which must be assumed for prejudice purposes, his sentence, in all likelihood, is too long.

Judges on this court universally have rejected the government's repeated effort to foreclose through procedural default habeas motions seeking the benefit of *Johnson*. *See, e.g.*, *United States v. West*, 314 F. Supp. 3d 223, 229 n.4 (D.D.C. 2018) (Leon, J.) (rejecting procedural default argument in the context of post-*Johnson* § 2255 motion); *United States v. Taylor*, 272 F. Supp. 3d 127, 135–36 (D.D.C. 2017) (Kollar-Kotelly, J.) (same); *United States v. Wilson*, 249 F. Supp. 3d 305, 315 (D.D.C. 2017) (Huvelle, J.) (same); *United States v. Brown*, 249 F. Supp. 3d 287, 293 (D.D.C. 2017) (Sullivan, J.) (same); *Charles Booker*, 240 F. Supp. 3d at 170–71 (Friedman, J.) (same). Nothing about this case justifies different treatment.

In sum, none of the government's three proposed procedural defects bars review of Hammond's § 2255 motion. This motion to vacate will succeed or fail on its merits, the matter to which the Court now proceeds.

### B. Hammond's Right to Resentencing

Clearing the procedural hurdles means only that Hammond's motion may be resolved on the merits. To succeed on the merits, Hammond must show (1) that *Johnson* itself requires invalidating sentences enhanced pursuant to a mandatory application of the Guidelines' residual clause and (2) that the prior convictions subjecting Hammond to a career-offender sentence

under the Guidelines do not qualify as crimes of violence under either the elements clause or enumerated-felonies clause. As discussed below, Hammond has satisfied these requisite showings.

       1.       *Does Johnson Apply to Mandatory Application of the Guidelines?*

Ordinarily, a § 2255 motion may be granted "[i]f the court finds that … the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). For Hammond, however, relief depends on whether striking down his sentence would enforce the right recognized in *Johnson* or would announce a new right. That Hammond has such a heavy lift is the consequence of his petition being timely under only § 2255(f)(3), which requires withholding relief from otherwise timely motions unless the petitioner claims the benefit of a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3); *see also Dodd*, 545 U.S. at 358.

Arguments about *Johnson*'s scope, which the parties raised as relevant to timeliness, are properly directed to this question. Hammond maintains that *Johnson* "announced the right not to have a sentence fixed by an unconstitutionally vague residual clause," Def.'s Reply at 1, leaving "no doubt that *Johnson* rendered the residual clause of the mandatory Career Offender Guidelines unconstitutionally void for vagueness," Def.'s Supp. § 2255 Mot. at 16. By contrast, the government posi ts that *Johnson* is about the ACCA, *see* Gov't's Opp'n § 2255 Mot. at 13, leaving open the constitutionality of sentences enhanced under the mandatory Guidelines' residual clause, *id.* at 14.

*Johnson* itself is proper place to begin.  In that case, the Supreme Court invalidated sentences enhanced pursuant to the ACCA's residual clause as violative of Due Process because that clause's indeterminacy "denies fair notice to defendants and invites arbitrary enforcement by judges."  135 S. Ct. at 2557.  The denial of fair notice occurs whenever a law "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime," and increases punishment based on an indecipherable "serious potential risk" standard."  *Id.* at 2558.

Mandatory Guidelines sentences under the residual clause share each fault cited by the Supreme Court, according to Hammond.  Def.'s Supp. § 2255 Mot. at 14–16.  Like the ACCA, the mandatory Guidelines' fixed sentences.  *Id.*  Moreover, the mandatory Guidelines implicate *Johnson*'s twin concerns.  *Id.* at 16.  Hammond is right on each point.  First, the mandatory Guidelines had the force of law.  *Booker*, 543 U.S. at 233–34.  Second, the residual clause's definition of crime of violence in the mandatory Guidelines tied risk to the hypothetical ordinary case.  *United States v. Sheffield*, 832 F.3d 296, 313 (D.C. Cir. 2016) ("[W]e apply the ACCA standard to determine whether an offense qualifies as a crime of violence under section 4B1.2" (quoting *In re Sealed Case*, 548 F.3d 1085, 1089 (D.C. Cir. 2008))).  Third, the mandatory Guidelines enhanced sentences when the past crime posed "serious potential risk," language identical to the ACCA's unworkable standard.  *See id.* at 312; *see also Cross*, 892 F.3d at 299 (ruling that the same faults identified in *Johnson* "inhere in the residual clause of the guidelines"); *Moore*, 871 F.3d at 82 ("Although the residual clause in the pre-*Booker* guidelines is not quite ACCA … it is not clearly different in any way that would call for anything beyond a straightforward application of [*Johnson*].").  Thus, *Johnson* completes all the constitutional legwork needed to resolve Hammond's motion.

Still, the government argues that *Johnson*, which makes no mention of the Guidelines, is ACCA specific.  Gov't Opp'n § 2255 Mot. at 13.  Noting the absence of a Guidelines reference in *Johnson* featured in the analysis of four of the circuits that denied a motion like Hammond's.[9]  *See Blackstone*, 903 F.3d at 1026–27 ("Neither *Johnson* nor *Welch* mentioned the mandatory or advisory Sentencing Guidelines."); *Greer*, 881 F.3d at 1247 ("[N]othing in *Johnson* speaks to the issue."); *Brown*, 868 F.3d at 302 ("*Johnson* dealt only with the residual clause of ACCA—a federal enhancement statute … .  *Johnson* did not discuss the mandatory Sentencing Guidelines' residual clause at issue here … ."); *Raybon*, 867 F.3d at 630 ("*Johnson*[]'s holding was limited to the ACCA and did not extend to other legal authorities such as the Sentencing Guidelines." (internal quotation marks omitted)).  *Johnson*'s silence as to the Guidelines, however, is unremarkable.  The constitutional question came to the court packaged as an ACCA case.  Commenting on the mandatory Guidelines would have been a departure from the context of the case.  Yet, § 2255(f)(3) speaks in terms of rights.  Congress presumably used "right" "because it recognizes that the Supreme Court guides lower courts not just with technical holdings but with general rules that are logically inherent in those holdings … ."  *Moore*, 871 F.3d at 82.

---

[9]    Two of those circuits—the Ninth and Tenth—also expressed leeriness of running afoul of the Supreme Court's repeated admonitions that lower courts must not "determin[e] what rights have been recognized under AEDPA."  *Blackstone*, 903 F.3d at 1026 (citing *Lopez v. Smith*, 135 S. Ct. 1 (2014); *Nevada v. Jackson*, 569 U.S. 505 (2013)); *see also Greer*, 881 F.3d at 1248 ("To entertain such an argument would undermine Congress's intent in passing AEDPA and the 'interests of comity and finality' underlying federal habeas review." (quoting *Teague*, 489 U.S. at 308)).  Yet, each rebuke those circuits cite enforced 28 U.S.C. § 2254(d)(1)'s limitation of federal relief to cases in which a state court unreasonably applied "clearly established Federal law, as determined by the Supreme Court of the United States."  *See Lopez*, 135 S. Ct. at 3–4; *Jackson*, 569 U.S. at 508–09; *Teague*, 489 U.S. at 308.  Strict enforcement of what has been "clearly established" for § 2254 is necessary to "prevent[] defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("Adherence to these principles serves important interests of federalism and comity.  AEDPA's requirements reflect a presumption that state courts know and follow the law." (internal quotation marks omitted)).  These principles "of federalism and comity" animating interpretations of § 2254 have limited relevance to § 2255.

Indeed, both in and since *Johnson*, the Supreme Court has illustrated that *Johnson* is not ACCA specific. A dissenting opinion in *Johnson* critiqued the Court's for striking the ACCA's residual clause when "[t]here are scores of federal and state laws that employ similar standards." *Johnson*, 135 S. Ct. at 2577 (Alito, J., dissenting). Had the decision been limited to ACCA, the majority's easy response to this criticism could have been to say so. Instead, the response to the dissent's worry that the Court's broad rule placed in constitutional doubt "dozens of federal and state criminal laws," which rely on phrases like "substantial risk," was that not all such laws required gauging risk against imagined crimes and not all such laws injected uncertainty into what constituted "substantial risk" by giving four vastly different examples of crimes that meet the threshold—a reference to the enumerated-felonies clause—as the ACCA did. *Johnson*, 135 S. Ct. at 2561.

Then, in *Beckles*, the Supreme Court summarized *Johnson*'s rule as forbidding "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Beckles*, 137 S. Ct. at 892. That rule applies to vague laws that "fix the permissible sentences for criminal offenses." *Id.* By invaliding the ACCA's residual clause, *Johnson* simply "applied the vagueness rule to a statute fixing permissible sentences." *Id. Beckles* reached a different conclusion for the current Guidelines not because of the shift from the ACCA to the Guidelines, but because of the shift from laws that bind to standards that merely guide. The advisory Guidelines did not trigger "the twin concerns underlying vagueness doctrine" because "they merely guide the district courts' discretion." *Id.* at 894.

In *Dimaya*, the Supreme Court considered a constitutional challenge related to the interplay of immigration and criminal law. Under 8 U.S.C. § 1227(a)(2)(A)(iii), non-citizens are

deportable if convicted of an "aggravated felony." Aggravated felonies include crimes of violence "as defined in section 16 of Title 18." 8 U.S.C. § 1101(a)(43)(F). In turn, § 16 defines crime of violence to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Despite textual differences, and the case's immigration valence, in *Dimaya* the Supreme Court held that § 16(b) suffered from the same constitutional defect as the ACCA's residual clause. 138 S. Ct. at 1210.

The Supreme Court's reasoning in reaching that holding is instructive. Section 16(b)'s residual clause, the Court wrote, combined the same two features that made the ACCA's residual clause "constitutionally problematic." *Id.* at 1213. Thus, "*Johnson* effectively resolved the case now before us." *Id.* The ensuing analysis reads like a book report on *Johnson*. Indeed, Section III of *Dimaya*, the heart of the Court's opinion, cites no case other than *Johnson*. *See id.* at 1214–16. To respond to dissenting opinions, the Court simply referred to *Johnson*. *See id.* at 1214 n.3 ("*Johnson* also anticipated and rejected a significant aspect of Justice Thomas's dissent in this case. … "); *id.* at 1215 n.4 ("The Chief Justice's dissent makes light of the difficulty of identifying a crime's ordinary case. In a single footnote, the Chief Justice portrays that task as no big deal: Just eliminate the 'atypical' cases, and (presto!) the crime's nature and risk are revealed. … That rosy view—at complete odds with *Johnson*—underlies his whole dissent … ."); *id.* at 1216 ("For anyone who has read *Johnson*, [Justice Thomas's dissent] will ring a bell"). Section 16(b) could be found constitutional only by "refusing to acknowledge one of the two core insights of [*Johnson*]." *Id.* at 1215 n.4. Section 16(b) was found unconstitutional not by extension of *Johnson* but by enforcement of *Johnson*. If the rest of the opinion had not already made that point clear, *Dimaya* concluded that, "*Johnson* tells us how to resolve this

case." *Id.* at 1223. Surely if the Supreme Court considered the question presented in *Dimaya* a matter of enforcing *Johnson*, the same is true here. The distance between *Dimaya* and *Johnson* is far greater than the distance between this case and *Johnson*.

Hammond's comparison to retroactivity law drives home that his motion does not seek to establish a new rule but only to enforce the new rule already articulated in *Johnson*. As Hammond notes, Def.'s Reply at 3, "the retroactivity of [the Supreme Court's] criminal procedure decisions turn on whether they are novel." *Chaidez v. United States*, 568 U.S. 342, 347 (2013). Applying this standard, the Supreme Court has explained that "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (quoting *Teague*, 489 U.S. at 301) (emphasis in original). Conversely, "a case does *not* 'announce a new rule, [when] it [is] merely an application of the principle that governed' a prior decision to a different set of facts." *Id.* at 347–48 (quoting *Teague*, 489 U.S. at 307) (emphasis and alternations in original). In practice, then, a court does not create a new rule if it only applies a "general standard to yet another factual situation." *Id.* at 348–49. Bringing that framework to Hammond's case, *Johnson* articulated a new rule that Hammond merely asks to be applied to a materially indistinguishable circumstance, simply swapping the ACCA's residual clause for its mandatory-Guidelines' parallel. Def.'s Reply at 9.[10]

The government, as was true for the five circuits finding a petition like Hammond's untimely, cites Justice Sotomayor's concurrence in *Beckles*, *see* 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring), in which she wrote that, "[t]he Court's adherence to the formalistic

---

[10]    Although new rules are not usually retroactive, *Johnson* was given retroactive effect because it fit one of the exceptions to the default rule. *Welch*, 136 S. Ct. at 1265 ("*Johnson* is … a substantive decision and so has retroactive effect under *Teague* in cases on collateral review.").

distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in [*Booker*] … may mount vagueness attacks on their sentences." *See* Gov't's Opp'n § 2255 Mot. at 14; *Blackstone*, 903 F.3d at 1027; *Green*, 898 F.3d at 320; *Greer*; 881 F.3d at 1244; *Brown*, 868 F.3d at 302; *Raybon*, 867 F.3d at 629–30. Placing such weight on purportedly "open" questions framed by a concurring or dissenting Justice in determining what rights the Supreme Court has recognized, might give those rights radically different shape. *Cf. Cross*, 892 F.3d at 288 ("As a lower court, we are required to follow the Court's precedents until the Court itself tells us otherwise. Unless and until a majority of the Court overrules the majority opinions in *Johnson* and *Dimaya*, they continue to bind us."). In any event, ascribing Justice Sotomayor's footnote dispositive significance is unavailing here given how the *Johnson* majority responded to the dissent's concerns about the decision's implications for similar laws and the Court's later opinion in *Dimaya*.

Next, the government argues that *Johnson* cannot apply here because, as *Beckles* exhibits, the Guidelines—mandatory or advisory—are not subject to a vagueness challenge. Gov't's Opp'n § 2255 Mot. at 29–33.[11] Even sentences imposed under mandatory Guidelines, the government argues, differ from the ACCA because the Guidelines always "operate within the statutory sentencing regime of the offenses of conviction" and an unconstitutional Guidelines calculation "would not alter the statutory boundaries for sentencing set by Congress for the crime." *Id*. at 30 (quoting *In re Griffin*, 823 F.3d 1350, 1355 (11th Cir. 2016)). By contrast, the ACCA "is a federal statute that alters the statutory sentencing range for a crime." *Id.* at 31. While the government, echoing the Eleventh Circuit, is correct that a career offender sentence

---

[11] Prior to *Beckles*, the government had conceded that even the advisory Guidelines' residual clause was unconstitutionally vague. Gov't's Opp'n § 2255 Mot. at 17.

under the mandatory Guidelines could never exceed a statutory maximum, that argument overlooks the mandatory Guidelines' effect on the sentencing floor. Setting a mandatory minimum, no less than setting a mandatory maximum "fix[es] the permissible sentences for criminal offenses." *Beckles*, 137 S. Ct. at 892. Indeed, "[i]t is indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. … And because the legally prescribed range *is* the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty." *Alleyne v. United States*, 570 U.S. 99, 112 (2013); *see also id.* at 116 ("[T]here is no basis in principle or logic to distinguish between facts that raise the maximum from those that increase the minimum.").

Moreover, the government continues, the mandatory Guidelines did not function as a law because even "[u]nder the pre-*Booker* Guidelines, courts had authority to depart from the prescribed range in exceptional cases." Gov't's Opp'n § 2255 Mot. at 32 (citing U.S.S.G. §§ 4A1.3, 5K2.0). The government's argument ignores *Booker*, which ruled that although the mandatory Guidelines were not statutes, the Guidelines still were "binding on judges" and imbued with "the force and effect of laws." *Booker*, 543 U.S. at 234. While sentencing judges had some authority to depart from the mandatory Guidelines, "the availability of a departure in specified circumstances does not avoid the constitutional issue." *Id.* at 234.[12] Of course, the constitutional issue arose only because the Guidelines were mandatory. *Id.* at 233.

Finally, Hammond persuasively argues that if § 2255(f)(3) requires defendants to wait until the Supreme Court takes a case, which is absolutely indistinguishable from a defendant's, defendants will sit on ripe and known claims. Def.'s Reply at 16. Such a result would be at odds

---

[12] Notably, "even statutory minimum sentences are not exempt from departures, if, for instance, the government files a substantial-assistance motion, 18 U.S.C. § 3553(e), or the court finds that the defendant is entitled to the statutory safety valve, *id*. § 3553(f)." *Cross*, 892 F.3d at 306.

with AEDPA's statute of limitation, which prioritizes finality and expedient resolution of meritorious claims. *See Mayle v. Felix*, 545 U.S. 644, 662 (2005) ("Congress enacted AEDPA to advance the finality of criminal convictions."); *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (assessing Federal Rule of Civil Procedure 15's applicability to habeas petitioners in light of "Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions").

Johnson's rule—the right not to have a sentence fixed by an indeterminate and wide-ranging residual clause—provides the answer to this case. No extension or new rule is necessary, just enforcement of the rule already established.

### 2.    Is Hammond still a career offender?

Determining that a prior offense does not constitute a crime of violence under the residual clause normally requires examining if the same offense might qualify as a crime of violence under either the elements clause or the enumerated-felonies clause.[13]  In this case, however, the government concedes that one of Hammond's two predicate convictions is for robbery under the D.C. Code and does not satisfy the remaining definitions of crime of violence.  Gov't's Opp'n § 2255 Mot. at 34 (citing *Mathis v. United States*, 136 S. Ct. 2243 (2016); *Descamps v. United States*, 570 U.S. 254 (2013); *Curtis Johnson v. United States*, 559 U.S. 133 (2010)).  A career-

---

[13]    In a footnote, the government states the Hammond must also show that the sentencing judge actually relied on the residual clause.  Gov't's Opp'n § 2255 Mot. at 11 n.7.  All but one judge in this district has rejected that position.  *Taylor*, 272 F. Supp. 3d at 134 (Kollar-Kotelly, J.) (defendant need not show actual reliance on residual clause); *Wilson*, 249 F. Supp. 3d at 311–13 (Huvelle, J.) (same); *Brown*, 249 F. Supp. 3d at 291 (Sullivan, J.) (same); *Charles Booker*, 240 F. Supp. 3d at 169 (Friedman, J.) (same); *but see West*, 314 F. Supp. 3d at 230–31 (Leon, J.) ("[H]abeas petitioner bears the burden of showing by a preponderance of the evidence that he was sentenced pursuant to the residual clause").  Burdening Hammond with the task of showing the sentencing judge's actual reliance on the residual clause "would create the absurd result that [Hammond] is not entitled to relief under *Johnson*, but a defendant who filed the same motion and had the same prior convictions would be entitled to relief if the sentencing judge years earlier had thought to make clear that she relied on the residual clause."  *Charles Booker*, 240 F. Supp. 3d at 169 (internal quotations marks omitted).  Until 2015, no legal or practical reason presented for any sentencing judge to clarify which definition of crime of violence applied.  *Id.* at 168.  In any event, the D.C. Circuit has not required that a defendant prove actual reliance on the residual clause.  *See Sheffield*, 832 F.3d at 312.

offender designation applies only when a defendant has two prior convictions for a crime of violence or controlled substance offense, U.S.S.G. § 4B1.1(a), and as Hammond's PSR reflects, he had, including the robbery conviction, only two prior convictions. PSR at 5–6. Thus, without the robbery conviction qualifying as a crime of violence under the residual clause, Hammond is not a career offender and the government's concession warrants resentencing.

C.    **Hammond's Motion to Modify**

As the government's response to Hammond's sentence reduction motion, pursuant 18 U.S.C. § 3582, correctly notes, that motion is either moot if Hammond prevails on the § 2255 motion or meritless if Hammond does not. Gov't Opp'n Mot. Modify at 1. Given that Hammond's § 2255 motion entitles him to resentencing, the motion to modify under § 3582 will be denied as moot.

IV.    **CONCLUSION**

For the foregoing reasons, Hammond's Motion to Vacate Judgment Under 28 U.S.C. § 2255, ECF No. 83, as supplemented, is granted. His Motion Seeking Modification of Sentence Based Upon United States Sentencing Guidelines Retroactive Amendment 706 Reducing Drug Quantity Table Pursuant to Table 18 U.S.C. § 3582(c)(2), ECF No. 76, is denied as moot.

The parties are directed to confer and submit jointly, by December 21, 2018, a proposed schedule to govern resentencing proceedings for Hammond.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.


Date: November 28, 2018


_____
BERYL A. HOWELL
Chief Judge